## HETHERINGTON v. BR. BANK AT MOBILE.

1. A direction by the creditor, to suspend proceedings upon an execution a-
   gainst the principal debtor, until further orders, no levy having been made,
   and there being no consideration for the delay, does not release a surety.

Error to the Chancery Court of the 5th Chancery District,
and Southern Division of the State of Alabama. Before the
Hon. A. Crenshaw.

THE complainant alledges in his bill, that about the 18th
March, 1844, the Branch Bank at Mobile recovered two
judgments against Samuel Johnson, one for $694 04, besides
cost; the other for $591 90. That executions issued there-
on, and came into the hands of the sheriff of Monroe, about
the 5th of April, 1844, and that the said executions were
levied by the sheriff of Monroe, on slaves, the property of
Samuel Johnson. That said Johnson, with the complainant
as his security, executed two forthcoming bonds for the de-

livery of the slaves on the first Monday in July, 1844. That the slaves were not delivered according to the terms of the bonds, and they were returned forfeited. That executions were issued on said bonds against said Johnson and complainant, returnable to the fall term, 1844, being issued about the 12th July, 1844. The bill further charges, that Johnson, the principal, applied to the Bank, and to Mr. Blount, the attorney of the Bank, for a stay of execution, and that by some arrangement, or contract, made with the Bank, the sheriff returned said execution stayed by order of the plaintiff. That other executions were issued on said forthcoming bonds in November, 1844, and were then in the hands of the sheriff. That Johnson, the principal, had removed his property from the State. That the stay of the execution was without the knowledge or consent of the complainant, who was a security merely. That Johnson has no property in the State out of which the money can be made, but that he had property sufficient in Monroe county, from the time the executions issued on said bonds, in July, 1844, until November, 1844. That the sheriff is about to levy on the property of complainant to satisfy said debt, and charges that the stay granted as aforesaid, discharges complainant from his liability to pay said judgments, and prays a perpetual injunction.

The Bank answered the bill, admitting the rendition of the judgments against Johnson, as stated in the bill; also, that executions issued thereon, and were levied on slaves, and that complainant became his security on forthcoming bonds, as charged in the bill. That the slaves were not delivered according to the condition of the bonds, and they were returned forfeited, and executions issued on said bonds thus returned. The answer also admits, that Johnson applied to the Bank to postpone the sale of his property, representing that he had a good crop of cotton, and that it would be lost by a sale of his slaves. That the Bank refused to grant indulgence, but addressed a letter to F. S. Blount, authorizing him to postpone the sale, so that the rights of the bank were not affected thereby. The answer also denies any contract, or agreement, whereby the payment of the debt was to be

postponed.   The answer admits, that Mr. Blount did direct
the sheriff to suspend proceedings on said executions until
further orders ; and that in the latter part of September, 1844,
the attorney addressed a letter to the sheriff, to proceed and
make the money on said executions ; which letter was left
with the deputy clerk, to be handed to the sheriff.   The
answer denies that there was any consideration given, or re-
ceived for the indulgence, and that the sheriff was only or-
dered to suspend proceedings on the executions, so that no
lien was thereby lost to the Bank.   The answer admits that
Johnson has left the State, but charges that complainant aid-
ed and assisted him to remove, and also, that he had property
of Johnson in his hands, and concludes with a demurrer to
the bill.

The testimony of the complainant shows, that Johnson
had eight or ten slaves in his possession, at the time the exe-
cutions issued on the bonds, and that it was ample to pay the
debt, and that he removed from the State in the latter part
of November, 1844, carrying his property with him, except
two slaves, both of which have been sold ; and from the tes-
timony of the one of defendant's witnesses, the proceeds ap-
plied to an execution in favor of the Bank against Johnson.

The testimony of Mr. Blount was also taken, which states,
that he ordered the sheriff to suspend further proceedings on
the executions until further orders ; but denied that the in-
structions authorized the sheriff to return the execution, stay-
ed by order of the plaintiff.   And he also testifies, that he
wrote the sheriff in September, 1844, to proceed to make the
money.

It does not appear that there was any definite agreement,
as to a stay of the execution, nor any consideration given, or
received for it.   The letter of the Bank to Mr. Blount mere-
ly gives him authority to suspend the executions for sixty
days, provided the Bank should lose no lien thereby ; and
the instructions of Blount to the sheriff, is, to suspend fur-
ther proceedings until further orders, relinquishing no lien
on the property.   It does not appear that a levy was made
on the property of Johnson by virtue of the executions issued
on the forthcoming bonds, but the sheriff returned them stay-
ed by order of the plaintiff.

The testimony of Mr. Blount also shows, that when he was informed of the return, he ordered other executions, and states that it was not his intention that the executions should be returned stayed, but that it was his ntentioni to cause the money to be made on the executions, in the latter part of September, or the first of October.

The Chancellor dismissed the bill, which is the matter now assigned for error.

COOPER and LESLIE, for plaintiff in error.

If the plaintiff in execution give time to the principal, or does any other act by which the security is injured, such act being done without the knowledge of such security, · ought to be discharged. See Rathbun v. Warren, 10 John. 597; Rees v. Bennington, 2 Ves. jr. 543.

In this case, Hetherington was security on a forthcoming bond, and for a special purpose, to be liable upon the event that the plaintiff, the sheriff and clerk performed certain acts prescribed by law. His undertaking was to this effect. If the principal delivers not the property, and the sheriff makes return of that fact, and thereupon the clerk within the time reissues, and Johnson, my principal, does not then pay it, I will. This doctrine seems to be clearly recognized and laid down in Pitman on Prin. & Sec. 178, and Law Lib. vol. 30. The case of Sawyer v. Bradford, 6 Ala. 572, it seems to us was not clearly considered.

F. S. BLOUNT, contra.

1. There is no evidence of a "stay of execution" being granted by the defendant to Samuel Johnston. The sheriff was instructed to "suspend proceedings, relinquishing no lien upon Samuel Johnston's property, until further written orders." This was nothing more than a postponement of the sale.

2. Admitting a stay was granted. The answer denies that there was any contract, agreement or consideration therefor. There is no evidence denying the statements of the answer in this particular.

A direction to the sheriff to stay proceedings upon an execution against the principal debtor, without consideration,

does not release the surety from the payment of the debt."
Sawyer v. Bradford, 6 Ala. Rep. 572.    See also to the same
point, Prout v. Branch Bank at Decatur, 6 Ala. R. 309 ; Le-
verich & Co. v. Bates, 6 Ib. 480 ; Martin v. Pope & Son, Ib.
532 ; Carpenter v. Devon, Ib. 718 ; Agee v. Steele, 8 Ib.
948 ; Wilson v. Bank of Orleans et al. 9 Ib. 847 ; Newell &
Pierce v. Hamer, 4 How. Miss. R. 684.

DARGAN, J.—It is not necessary to determine, whether
a security on a forthcoming bond will be discharged if the
creditor, after a levy is made on personal property of value
sufficient to satisfy the debt, orders the property to be restor-
ed to the possession of the principal debtor, without the con-
sent of the security.    But the simple question is, if the exe-
cution is issued, but not levied, may not the creditor grant
indulgence to the principal debtor.    The creditor not being
bound by any contract to suspend proceedings for any defi-
nite time, but having the entire right to proceed at any mo-
ment to make the money ?

This question arose in the case of McKinney v. Waller,
1 Leigh's Rep. 434, under circumstances very similar to the
facts disclosed in this case.    In that case an execution was
issued, the sheriff was about to levy on the property of the
principal, but he prevailed on the creditor to give him indul-
gence.    The creditor gave the sheriff written instructions
not to levy until he, the creditor should see him.    The sheriff
returned—not executed, by order of the plaintiff.    The prin-
cipal debtor removed his property afterwards, beyond the
jurisdiction of the court, and the question was, did the in-
structions so given by the creditor relieve the security, and
it was determined that the security was not discharged.    To
the same effect is the case of Alcock v. Hill, 4 Leigh's Rep.
622.

In the case of Sawyer v. Bradford, 6 Ala. Rep. 572, this
court held, that mere instructions by the plaintiff to the she-
riff, to stay proceedings on an execution against the principal
debtor, did not release the security, and also, in 11 Ala. R.
524, it is said, that mere gratuitous indulgence given by the

plaintiff to the principal after the recovery of a judgment against him, will not discharge a security. Nor do we see any reason why mere indulgence to the principal debtor, after judgment and execution, should discharge a security, when it is admitted as settled law, that indulgence merely, before judgment will not discharge a security. But before a security can claim exemption from his contract and liability, he must show that the day of payment has been postponed without his consent, by a contract valid in law, and binding on the parties. See 2 Paige's R. 497; 3 Stew. 63; 2 Johns. Ch. R. 357; 4 Harris & McK. 41.

In this case the executions were issued, but not levied; and the order was, to suspend the execution until further orders. This order was not given in consequence of any new consideration, nor did it deprive the plaintiff of the immediate right to coerce the payment of the money at any moment afterwards. Such an order we do not think discharges the security, and the decree of the chancellor is consequently affirmed.